IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FILED
OCT 11 2013
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| LAMAR PANNELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:12CV28 |
| ) | |
| SERGEANT BASERAP, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION
(Dismissing With Prejudice 42 U.S.C. § 1983 Action)

Lamar Pannell, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

### A. Preliminary Review

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "'an indisputably

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

42 U.S.C. § 1983.

meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient

2

"to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

B.  **Summary of Allegations**

The allegations in Pannell's Complaint are as follows:

> On Friday, December 9, 2011 at approximately 1:00 pm at the Northern Neck Regional Jail . . . I was summon[ed] to the law-library area to have "Jumah" services. Once there in the designated area I was told by Sgt.- Baserap that I can not conduct "Jumah" service in the Arabic Language as custom and traditional. Also, Sgt. Baserap told me that, too, it applies to my prayer (worship) too. That if I did not comply to these orders "Jumah" service would be terminated. At 1:30 pm, roughly a half hour into the hour allowed[,] services were terminated. Due to the custom and tradition of the Arabic language spoken. This is a clear, blatant, and

> flagrant violation of my constitutional right of freedom to practice my religion.

(Compl. 4 (spelling and capitalization corrected).) Pannell attached a copy of a grievance he submitted on December 29, 2011, claiming that "I'm being denied the practice of my religion . . . I have the right and freedom to do so even to the extent of reciting the Arabic language as a Muslim." (Inmate Grievance Appeal (ECF No. 7-1, at 1).)[2] The Superintendent responded:

> You are being denied nothing. As this matter has already been addressed in previous lawsuits, I will explain: You are perfectly fine to speak whatever language you wish (Arabic, Spanish, whatever) in your unit. If you are in an unsupervised cross housing unit meeting outside of your housing unit—English must be spoken.

(*Id.*)

Pannell demands $5,000.00 and injunctive relief in the form of "allowing the practice of religion correctly." (Compl. 6 (capitalization corrected).)

Pannell names Sergeant Baserap, Captain Darrell Turner, the Chief of Security, and Superintendent Theodore E. Hull as defendants. (*Id.* at 1-2.) As explained below, Pannell fails to state a claim against the three defendants.

C. Analysis

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Where a complaint

---

[2] The Court may appropriately consider Pannell's supplements to his Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 92–94 (2007).

4

alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (citing *U.S. ex rel. Brzozowski v. Randall*, 281 F. Supp. 306, 312 (E.D. Pa. 1968)). Here, Pannell fails to mention either Defendant Turner or Defendant Hull in the body of the Complaint. Thus, he has failed to allege a claim against either Turner or Hull.

Pannell also fails to state a constitutional claim against Defendant Baserap. Although Pannell does not specify the constitutional rights at issue, he appears to bring a claim under the Free Exercise Clause of the First Amendment.[3] To state a claim, Pannell must allege facts that suggest that "(1) he holds a sincere belief that is religious in nature" and (2) that Defendant Baserap imposed a substantial burden on the practice of his religion. *Whitehouse v. Johnson*, No. 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *4 (E.D. Va. Nov. 18, 2011) (citing *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989)). "Government officials impose a substantial burden on the free exercise of religion by 'put[ting] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Massenburg v. Adams*, No. 3:08cv106, 2011 WL 1740150, at *4 (E.D. Va. May 5, 2011) (alteration in original) (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (some internal quotation marks omitted)).

---

[3] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

5

Assuming without deciding that Pannell's religious beliefs are sincere, Pannell fails to allege that Defendant Baserap imposed a substantial burden on his ability to practice his religion. Pannell has not alleged that Defendant Baserap's actions have put "substantial pressure" on him to "modify his behavior and to violate his beliefs." *Lovelace*, 472 F.3d at 187. Pannell suggests that on one occasion, in violation of the order of Defendant Baserap that Pannell must speak English during his religious service, Pannell disobeyed the order by speaking in Arabic, and the service was terminated. (Compl. 4.) Pannell himself suggests that speaking Arabic during a Jumah prayer service is "custom and traditional" (*id.*), but makes no allegation that speaking in English during the service places substantial pressure on him to violate his religious beliefs. *Lovelace*, 472 F.3d at 187. Thus, Pannell fails to allege how a directive to speak in English during the service substantially burdens his religious practice. *See Krieger v. Brown*, 496 F. App'x 322, 325–26 (4th Cir. 2012); *see also Shabazz v. Va. Dep't of Corr.*, No. 3:10CV638, 2013 WL 1098102, at *6–9 (E.D. Va. Mar. 15, 2013).

Moreover, Pannell makes no allegation that he is prohibited from engaging in other tenets of his religion including meeting for religious study. *See Whitehouse*, 2011 WL 5843622, at *4 (holding that where inmate may still engage in religious practices but "not through his preferred vendor" and where inmate possesses the ability to handwrite religious coursework instead of his preferred method of typing, inmate failed to allege a substantial burden on his religion); *cf. Coleman v. Governor of Mich.*, 413 F. App'x 866, 875–76 (6th Cir. 2011) (concluding that policies limiting access to religious radio and television failed to substantially burden religious exercise because inmates "may receive

6

religious literature via the mail and may receive visitors at the prison to discuss their religious beliefs"). As explained in response to his Inmate Grievance Appeal, Pannell was free to speak Arabic in his unit, just not in unsupervised multi-unit meetings. (Inmate Grievance Appeal 1.) Because Pannell fails to demonstrate that Defendant Baserap substantially burdened his practice of religion, Pannell states no First Amendment claim.

Additionally, courts in this district have found that the policy of the Northern Neck Regional Jail prohibiting the speaking of Arabic in multi-housing unit religious services passes constitutional muster because it is reasonably related to legitimate penological goals. *Sweet v. Northern Neck Regional Jail*, 857 F. Supp. 2d 595, 597–99 (E.D. Va. 2012); *see also McCoy v. Frazier*, No. 2:09cv412, 2010 WL 2975747 (E.D. Va. July 6, 2010) (granting summary judgment for defendants on an identical free exercise challenge). A prisoner's sincere desire to practice a religion may be burdened upon a showing that the restriction is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In assessing whether a regulation is reasonable, courts consider (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether "alternative means of exercising the right [exist] that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there was an

"absence of ready alternatives" to the regulation in question. *Turner*, 482 U.S. at 89–90 (citations omitted) (internal quotation marks omitted); *see O'Lone*, 482 U.S. at 350–52.

In rejecting the same claim Pannell makes here, the *McCoy* and *Sweet* Courts determined:

> The policy that Plaintiff challenges—that when inmates from different housing units and of different security levels are together, they must be supervised and they may not speak in a language that the person who is supervising the gathering cannot understand—is based on security concerns. The policy is logically connected to valid security concerns. When inmates from different housing units and security levels are allowed to gather together, it is important that they not be allowed to surreptitiously plan anything that might present a security risk. Therefore, it is a reasonable policy that they be monitored. *Tisdale v. Dobbs*, 807 F.2d 734, 738 (8th Cir. 1986) (upholding district court's finding that 'the threat of unsupervised group prayer meetings becoming forums for dissension and unrest' was supported by an historical occurrence of just such an event). . . .
>
> The policy is limited to only those instances when inmates from *different* housing units and custody levels are gathered together. Such gatherings present a wholly different security risk than gatherings of inmates from one housing unit or security level . . . . Inmates from different housing units and custody levels could conceivably plan an institution-wide action, such as a riot. While a riot can certainly be planned in a given housing unit, a riot contained to a single housing unit would not present as much danger as an institution-wide riot. This is a reasonable restriction, particularly considering NNRJ's efforts to accommodate prisoners' desire to gather with others of their faith. For example, Muslim inmates are allowed the unprecedented privilege of gathering together from different housing units and security levels. The only restriction is that these gatherings be monitored and that inmates not speak Arabic.
> . . . .
> . . . The policy also allows inmates an alternative method of practicing their religion. Muslim inmates in a given housing unit may gather *within* their housing unit for Jumah services and pray in Arabic. The policy is narrowly tailored to alleviate the worst security concerns, while still allowing inmates to pray in Arabic when they are in their own housing unit. Therefore, plaintiff's free exercise of his First Amendment rights has not been substantially burdened.

8

*Sweet*, 857 F. Supp. 2d at 598 (quoting *McCoy*, 2010 WL 2975747 at *3–4 (emphasis and omissions in original).[4] The *Sweet* court noted that while *McCoy* was decided at the summary judgment stage, "the factual determinations reflected in the passages quoted above are entirely consistent with the response to plaintiff's grievance that he has submitted as an exhibit to his complaint." *Id.* The same holds true for Pannell and his submitted Inmate Grievance Appeal. "[T]he [Northern Neck Regional Jail] policies described in *McCoy* of requiring prayers be spoken in English when inmates from different housing units and classification levels congregate together, but allowing prayers to be offered in Arabic within individual housing units, remained in place at the time of [Pannell's] [C]omplaint." *Id.* at 598; (*see* Inmate Grievance Appeal 1.) For the reasons expressed in *Sweet* and *McCoy*, the policies of the Northern Neck Regional Jail "are reasonably related to legitimate penological interests and do not substantially burden inmates' rights to free exercise of their First Amendment rights." *Sweet*, 857 F. Supp. 2d at 598 (citing *O'Lone*, 482 U.S. at 349).

Accordingly, Pannell's claim and the action will be dismissed. The Clerk will be directed to note the disposition of the action for the purposes of 28 U.S.C. § 1915(g).

An appropriate Order will accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: Oct 10 2013
Richmond, Virginia

---

[4] The Court corrects the placement of the elipses, removes a paragraph symbol, and corrects formatting in the quotation.